(No. 13341.—Judgment affirmed.)

HENRY SCHOELLKOPF *et al.* Appellees, *vs.* THE CITY OF CHICAGO *et al.* Appellants.

*Opinion filed June 16, 1920—Rehearing denied October 8, 1920.*

1. RES JUDICATA—*when confirmation of a special assessment is not res judicata of bill to enjoin performance of contract.* A judgment confirming a special assessment for paving a street is not *res judicata* of a bill filed by the owners of the assessed property to enjoin the performance of the paving contract on the ground that specifications, added after the assessment was confirmed, call for a material wholly controlled by one manufacturer.

2. PATENTS—*what does not constitute infringement of a patent.* A patent on a certain wood-preserving oil containing not less than five per cent of tar acid is not infringed upon by producing oil containing the same per cent of tar acid through mixing the coal tar from which the oil is distilled with other coal tar having a higher percentage of acid.

3. SPECIAL ASSESSMENTS—*municipality must not be victim of monopoly in endeavor to secure best material for improvement.* It is important that a municipality obtain the best material and secure the best and most enduring improvement, but under the statute it must not be the victim of monopoly in procuring the best results.

4. SAME—*specification which tends to restrict competition is unlawful.* Under section 74 of the Local Improvement act all contracts for the making of a public improvement to be paid wholly or in part by special assessment or special tax must be let to the lowest responsible bidder, and any specification which tends to restrict such competition is unlawful.

5. SAME—*when specifications restrict competition—injunction.* Advertising for bids for paving with creosoted wooden blocks upon specifications which require that the blocks be treated with a cer-

tain kind of wood-preserving oil which is produced by only one manufacturer restricts competitive bidding, and the city may be enjoined from performing a contract for paving with such material.

CARTER and THOMPSON, JJ., dissenting.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding.

SAMUEL A. ETTELSON, Corporation Counsel, and GEORGE A. CURRAN, (CHESTER E. CLEVELAND, GEORGE P. FOSTER, LEON HORNSTEIN, and OTTO W. ULRICH, of counsel,) for appellants.

GEORGE A. MASON, and WM. T. HAPEMAN, (DWIGHT B. CHEEVER, and HENRY E. MASON, of counsel,) for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The city council of the city of Chicago passed an ordinance on February 5, 1917, for paving the roadway of Sherman street with creosoted wooden blocks from the south line of Jackson street to the north line of West VanBuren street, and on March 12, 1917, the city filed its petition for the levy of a special assessment to pay the cost of the improvement. A judgment confirming the assessment was entered on May 21, 1917, and thereafter the city advertised for bids upon specifications as to the work and the preserving oil to be used, and providing that bidders should furnish an affidavit of the individual or the managing officer of a corporation or active member of a firm manufacturing creosoted blocks, setting forth that the oil used for treating the blocks was a distillate obtained wholly and entirely by distilling coal tar and free from any adulteration. Only two bids were received,—one from the Ryan Company and the other from John A. McGarry & Co.,—each stating that it

proposed to use the paving blocks manufactured and treated by the Republic Creosoting Company of Indianapolis, Indiana. The Ryan Company was the low bidder and the contract was entered into with the specifications attached, and the contractor being about to commence work, the appellees, owners of property assessed to pay for the improvement, filed their bill in the circuit court of Cook county charging that the city had added to the provisions of the ordinance, by the specifications for the work upon which bids were called for, conditions not contained in the ordinance, by specifying an oil which was a patented article owned or controlled by the Republic Creosoting Company, and that that company was the only distiller of coal tar that could supply the oil required by the specifications and controlled the supply of the same. The bill was answered with denials of the validity of the patent owned or controlled by the Republic Company, that the oil specified was a patented article owned or controlled by that company or that the specifications tended to restrict free competition in the bidding. There was a hearing and the bill was dismissed for want of equity. An appeal from the decree was first prosecuted to this court, but the validity of the ordinance not being questioned and the assignments of error presenting no question giving jurisdiction to this court, the cause was transferred to the Appellate Court for the First District. (*Schoellkopf* v. *City of Chicago,* 285 Ill. 458.) The Appellate Court reversed the decree and remanded the cause, with directions to order an injunction as prayed for in the bill, and gave a certificate of importance and allowed an appeal to this court.

It was insisted at the hearing that the questions raised by the bill were *res judicata* by the confirmation of the assessment for the improvement; and that would be true if the ordinance had contained the specifications alleged to have been restrictive of competition so that the question was or might have been at issue in that proceeding. The speci-

fications in question, however, were not contained in the ordinance either in form or substance, but were included in the specifications at the instance or upon the advice of Peter C. Reilly, the patentee in the patent referred to and president of the Republic Creosoting Company, and no question was or could have been raised concerning them on the application for the confirmation of the assessment. The judgment confirming the special assessment determined nothing as to the added specifications.

The ordinance provided that the wood-preserving oil should be a distillate obtained wholly from coal tar containing not more than a certain per cent of insoluble matter and have certain specific gravity and other similar requirements. In calling for bids the city added to the specifications the following requirements not contained in the ordinance:

"6. The tar acids of the distillate from two hundred and fifty (250) degrees centigrade to three hundred and fifteen (315) degrees centigrade must not be less than five (5) per cent of this distillate (250 to 315 C.)

"7. The amount of the unsaponifiable oil (by sulphuric acid and caustic soda) in the distillate from two hundred and fifty (250) degrees centigrade to three hundred and fifteen (315) degrees centigrade must not exceed three and one-half (3½) per cent of this distillate."

The controlling question of fact at the hearing was whether or not these added specifications limited or precluded competitive bidding, either because the requirement of not less than five per cent of tar acids called for a distillate which would be an infringement of the Reilly patent, or, if not an infringement of the patent, whether the production of such an oil was controlled by the Republic Creosoting Company and could not be obtained generally in the market by contractors desiring to bid for the work, and at the hearing all the evidence related to those questions, only.

294  8

The oil used as a preservative of wooden paving blocks is produced by distillation from coal tar, and the method or process of distilling or manufacturing the oil was not referred to or limited either in the ordinance or the specifications, but the specifications furnished a test for the quantity or percentage of tar acid in the product. Coal tar is a common product from coal in making coke and illuminating gas, and tar acid is a natural element of coal tar, but coal tar varies greatly in the percentage of tar acid contained, the average being about three per cent. There may be a pure distillate of coal tar without having an appreciable percentage of tar acid in it or a pure distillate may have five per cent tar acid or more, and the coal tar which contains less than five per cent of tar acid may have tar acid added to it by mixing it with other coal tars. There are oils distilled from coal tars which would meet the requirements of the ordinance but would not meet the specifications upon which bids were called for. The Republic Creosoting Company is a distiller of coal tar and produces in large quantity oil containing not less than five per cent tar acid. It was alleged in the bill, and experts testified on the hearing, that the production of such an oil would be an infringement of the Reilly patent, but we are of the opinion that the position cannot be maintained. While more of the coal tar produced at the different coke and gas plants will yield less than five per cent of tar acid, the evidence shows that if the tar is deficient in acid content it may be increased by mixing with other coal tar or perhaps otherwise increasing the percentage of acid, and there is no exclusive right or privilege of engaging in that business. Anyone can buy coal tar and make selections of such as have a sufficient tar acid content and with a suitable equipment may produce the oil specified. Peter C. Reilly, the patentee, testified that anyone who saw fit could produce oil with five per cent acid and its production would not be an infringement of his patent, and we think that that state-

ment must be accepted as correct. It appears, however, that experts of great knowledge and experience regarded the production of the specified oil as an infringement of claims 1, 2 and 3 of the Reilly patent, which justifies an assumption that bidders would so regard it. The Republic Creosoting Company shipped to Chicago in the previous year 400,000 gallons of the contract oil, filling all the requirements of the city, so that it appears, as a practical question, that it had a monopoly of that business in Chicago under these specifications, which had been employed by the city since 1914. Taking it to be true that the production of the contract oil is not an infringement of the Reilly patent, the specifications were equally unlawful and restrictive of bidding if the Republic Creosoting Company had a monopoly of the production of the oil. The vice-president of the American Tar Products Company testified that his company was a distiller of coal tar and was the second in size in the United States and had several plants; that his company had inquiries for the so-called Chicago oil, but they had no such oil. The chief engineer of the Jennison-Wright Company of Toledo testified that his company could not get the Chicago contract oil and he did not know where the oil could be had. It was stipulated that the vice-president of the Central Creosoting Company of Chicago had applied to the Barrett Company, (the largest distiller of coal tar in the United States,) the American Tar Products Company, the J. F. Lewis Company, and other distillers, to furnish creosote oil for paving block purposes according to the Chicago specifications and could not get such oil and did not know where it could be had; that Grant Shipley, of the Ohio Wood Preserving Company of Pittsburg, would testify that his company and two affiliated companies were in the business of creosoting wood paving blocks, and he had applied to the companies above named and other distillers of coal tar and was unable to procure oil meeting the specifications because the distillers were unable to make such oil,

and that G. W. Fry, of the Compressed Wood Company of Cincinnati, would testify that he had applied to the above named companies and other distillers and had been unable to secure the oil specified, for the reason that the companies did not make that oil. The necessary conclusion is that among the large number of companies engaged in distilling coal tar the specifications limited bidders to the product of one.

There was evidence that tar acid adds to the preservative quality of the oil and aids in detecting adulteration with the products of petroleum. It is probably true that as a germicide coal tar adds to the preservative quality of oil and may be one test of adulteration, but it is not a guaranty against adulteration, and the fact that it adds to the preservative quality of the oil or aids in detecting adulteration does not meet the objection that competition was restricted or prevented. It is, of course, of much importance that a municipality should be able to obtain the best material and secure the best and most enduring improvement, but at the same time, under the statute, it must not be the victim of monopoly in procuring the best results. Section 74 of the Local Improvement act provides that all contracts for the making of any public improvement to be paid for wholly or in part by special assessment or special tax shall be let to the lowest responsible bidder, and any provision which tends to restrict such competition is unlawful. (*Siegel* v. *City of Chicago,* 223 Ill. 428; *Chicago Title and Trust Co.* v. *City of Chicago,* 224 id. 124; *Village of Rossville* v. *Smith,* 256 id. 302; *City of Rockford* v. *Armour,* 290 id. 425.) The specification of an oil produced by but one of the many distillers of coal tar restricted competitive bidding and was therefore unauthorized and unlawful.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

CARTER and THOMPSON, JJ., dissenting.